## A. K. MOORE v. DANIEL REAVES, *et al.*

1. HOMESTEAD; *Equitable Owner.* An equitable owner of real estate may occupy and hold the same as his homestead, subject to all the rights, privileges, immunities and disabilities, given and imposed by the homestead-exemption laws. (Following *Tarrant v. Swain*, ante, 146.)

2. ———— *Possession, is Notice to All.* When an equitable owner of a homestead is in the actual occupancy of the land, all persons must take notice of his homestead interest.

3. ———— *Conveyance by Husband Alone.* An actual occupant of land, claiming the same as his homestead, cannot transfer his equitable title to the land, even conditionally, while he occupies the same as his homestead, except with the consent of his wife.

4. ———— And where an attempt is made by the husband alone, without the consent of the wife, to transfer such title, so as to secure the payment of a preëxisting debt, not previously a lien on the homestead, such debt does not thereby become a lien on the homestead.

5. ———— *Trust; Lien of Transferee.* And where the transferee, in such a case, afterward procures the legal title to himself, without the consent of the wife, he holds such legal title in trust for the occupants of the homestead, and is entitled to be reimbursed only for such sums as he has actually and properly paid to disencumber the property from valid liens.

*Error from Brown District Court.*

ACTION by *Reaves*, and *Jane* his wife, to quiet their title to certain lands occupied and claimed by them as their homestead. *Moore*, defendant, claimed to be the owner in fee of said lands. The facts are sufficiently stated in the opinion, *infra*. The district court, at the April Term 1873, found

and adjudged that *Reaves* and wife were the equitable owners, and that *Moore* had a lien on the lands for certain moneys paid thereon by him, and decreed that *Reaves* should pay to *Moore* the amount of his lien, and that *Moore* should thereupon convey the legal title to them. *Moore* appeals from this decision, and brings the case here on error.

*J. P. Taylor*, and *Nathan Price*, for plaintiff in error.

*W. W. Guthrie*, and *Killey & May*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: On July 27th 1867, the Central Branch Union Pacific Railroad Company owned the W.$\frac{1}{2}$ of the N.W.$\frac{1}{4}$ of section 21, township 3, range 17, in Brown county, and on that day entered into a written contract for the sale of said land to Thomas J. Payne. Payne paid $10 down, and was to make two other payments at stated periods up to July 27th 1876, when the railroad company was to convey said land to Payne, or to his heirs or assigns, by a good and sufficient warranty deed. In March 1868, Payne, in consideration of $42.50 to him paid, assigned his claim to said land to Alfred S. Jones, by a written assignment indorsed on the back of said contract. In February 1869, Jones, in consideration of $500 paid to him, assigned his claim to said land to Daniel Reaves, (plaintiff below, defendant in error,) by a like written assignment indorsed on the back of said contract. Reaves took immediate possession of said land, and with his wife and family has occupied the same as his homestead ever since. On the 15th of October 1869, Reaves, by a like written assignment indorsed on said contract, except that the assignee's name was left blank, assigned his claim to said land to secure the payment of a certain promissory note of $150 held by Samuel Lappin, and delivered said contract with the indorsements thereon to said Lappin. This assignment was made, and the contract and indorsements delivered, without the knowledge or consent of the wife of said Reaves. Reaves and his grantors made the first five payments on said contract

as they became due.   Reaves continued to occupy said land as his homestead, and made improvements thereon of the value of $300.  Afterward, A. K. Moore (defendant below, plaintiff in error,) obtained said contract and assignments from said Lappin.   What he paid for them, or how he got them, is not shown.   His name was inserted in said blank assignment from Reaves to Lappin, so as to make the assignment appear to be an assignment from Reaves to Moore; but Moore did not make the insertion, and there is nothing in the record that shows that he knew how or when it was inserted, or in what manner the assignment was made.   From anything appearing in the record he may have properly supposed himself to be a *bona fide* purchaser of the land.   On the 21st of December 1871 Moore paid the other five payments on said contract, and procured a deed to be executed from the railroad company to himself for said land.   At the time he made said payments there were none of them yet due.   Upon these facts the court below rendered judgment, that plaintiff Reaves should pay to the defendant Moore the amount with interest, to-wit, $292.40, which Moore in good faith paid to the railroad company, and that Moore should convey to Reaves by deed said land.   Moore complains of this judgment.   We however perceive no error therein prejudicial to Moore. Reaves was the equitable owner of said land.   He held the same as his homestead.   (And that such may be done, see *Tarrant v. Swain*, just decided, ante, pp. 146, 148, and authorities there cited.)   And being in the actual possession thereof, every person was bound to take notice of his homestead interests.   And therefore, although Moore may have been a *bona fide* purchaser in fact of said land, yet in law he took it subject to all the homestead interests of the plaintiff.   The blank assignment to Lappin, even if it had been valid, would have been nothing more than a conditional alienation of the plaintiff's equitable interest in said land, in the nature of a mortgage to secure the payment of said $150 note, and would not have been an absolute conveyance to Lappin or Moore of the plaintiff's equitable title.   But, as the assignment was of

land held by the plaintiff as his homestead, and was made by the plaintiff alone, without the consent of his wife, the assignment itself was and is absolutely void. (*McKee v. Wilcox,* 11 Mich. 358; *McCabe v. Mazzuchelli,* 13 Wis. 478.)

We think the following is the law of this case: An equitable owner of real estate may occupy and hold the same as his homestead, subject to all the rights, privileges, immunities and disabilities given and imposed by the homestead-exemption laws. (Following *Tarrant v. Swain,* supra.) And being in the actual occupancy of the land, all persons must take notice of his homestead interests. He cannot transfer his equitable title to the land, even conditionally, while he occupies the same as his homestead, except with the consent of his wife; and where an attempt is made by the husband alone, without the consent of his wife, to transfer such title, so as to secure the payment of a preëxisting debt not previously a lien on the homestead, such debt does not thereby become a lien on the homestead. Where the transferee in such a case afterward procures the legal title to himself, without the consent of the wife, he holds such legal title in trust for the occupants of the homestead, and is entitled to be reimbursed only for such sums as he has actually and properly paid to disencumber the property from valid liens.

The judgment of the court below is affirmed.

All the Justices concurring.